**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

| | |
|---|---|
| LARRY E. SCOTT, JR., individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> PNC BANK, NATIONAL ASSOCIATION and PNC FINANCIAL SERVICES GROUP, INC., <br><br> Defendants. | Case No. _____ <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Larry E. Scott, Jr. ("Plaintiff"), by and through the undersigned attorneys, brings this action, both individually and on behalf of all others similarly situated, against Defendants PNC Bank, National Association ("PNC Bank") and PNC Financial Services Group, Inc. ("PNC Financial") (collectively, "Defendants") and alleges as follows:

### The Parties

1. Plaintiff Larry E. Scott, Jr., is a South Carolina citizen and Richland County resident. In March 2013, Plaintiff purchased a new vehicle via a Retail Installment Sales Contract (the "Contract"). The other party to the contract was Myrtle Beach Chevrolet Cadillac in Myrtle Beach, South Carolina, who later assigned the Contract to Defendant PNC Bank.

2. Defendant PNC Bank is a Pennsylvania corporation and citizen with its principal place of business in Pittsburgh, Pennsylvania. PNC Bank is a subsidiary of Defendant PNC Financial. PNC Bank is a financial institution that is and has been engaged in retail and business banking in the state of South Carolina and throughout the United States.

## Jurisdiction and Venue

3. This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, which provides for federal jurisdiction in class actions with minimal diversity when damages exceed five million dollars, exclusive of interest and costs. This Court also has federal question subject-matter jurisdiction over the federal statutory claims, pursuant to 28 U.S.C. § 1331, and supplemental subject-matter jurisdiction over the pendent state law claims, pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court because: Defendants reside in this judicial district within the meaning of 28 U.S.C. § 1391; a substantial part of the events giving rise to the claim occurred in this judicial district; and/or Defendants are subject to this Court's personal jurisdiction with respect to this action.

## Factual Background

**Plaintiff's Vehicle Purchase**

5. On March 16, 2013, Plaintiff purchased a new 2013 Chevrolet Camaro (the "Vehicle") in Myrtle Beach, South Carolina, from Myrtle Beach Chevrolet Cadillac ("MBCC") for a total price, including sales tax, of $60,302.78. Plaintiff financed the

2

purchase by borrowing $59,802.78 from MBCC pursuant to a PNC Bank Retail Installment Sales Contract (the "Contract").

6. The Contract provided that Plaintiff was required to make monthly payments for 60 months beginning April 30, 2013.

7. As provided for in the Contract, on the date that Plaintiff purchased the Vehicle, MBCC assigned its interest in the Contract to PNC Bank pursuant to the terms of a separate agreement between MBCC and PNC Bank.

8. Plaintiff was not provided a copy of the assignment agreement, nor was he informed of the terms of the separate agreement between MBCC and PNC Bank.

9. The Contract provides that Plaintiff must maintain insurance covering physical damage to the Vehicle for the term of the Contract. Specifically, section 2(d) of the Contract states the following:

> **d.    Insurance you must have on the vehicle.**
>
> You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the cost of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

10. The Contract also provides:

> You may buy the physical damage insurance this contract requires . . . from anyone you choose who is acceptable to us. You

3

> may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.

The corresponding "Vendor's Single Interest Insurance" box is not checked in Plaintiff's Contract. Instead, it is marked "N/A" (*i.e.*, not applicable), meaning Plaintiff was not required to purchase any additional insurance other than physical damage insurance.

11. The "Itemization of Amount Financed" within the Contract further includes line items for the following: (A) Cost of Optional Credit Insurance; (B) Vendor's Single Interest Insurance Paid to Insurance Company; (C) Other Optional Insurance Paid to Insurance Company or Companies; and (D) Optional Gap Contract. Each of these line items is marked "N/A" (*i.e.*, not applicable), indicating Plaintiff was not financing the cost of any of these options.

12. At the time of purchase, Plaintiff also signed a MBCC Vehicle Invoice that provided, among other things, Plaintiff's "Insurance Information," including the name, address, and telephone number for Plaintiff's insurance agent at Farm Bureau. Implicit in Plaintiff's provision of this "Insurance Information" is the understanding that MBCC would use that information to confirm that Plaintiff had purchased the necessary insurance on the Vehicle.

13. Upon entering into the Contract on March 16, 2013, and at all times since, Plaintiff's Vehicle has been insured with Farm Bureau as required by section 2(d) of the Contract.

**Plaintiff's Loan Payoff and Discovery of Unauthorized Charges Added to the Principal Balance**

14. Plaintiff complied with the obligations of the Contract, making payments—the majority of which were in excess of the minimum monthly amount—each month until his final payment on April 30, 2018.

15. In October 2018, approximately six month after fulfilling the requirements of the Contract, Plaintiff contacted PNC Bank to inquire as to the status of the title to the Vehicle as well as why the Contract had not been paid off prior to April 30, 2018. The PNC Bank representative informed Plaintiff that title would be released electronically via the Department of Motor Vehicles and that a "Customer History" summarizing his loan payments would be sent in the mail.

16. Plaintiff received his "Customer History" document, dated November 27, 2018, from PNC Bank, in early December 2018.

17. Upon review, Plaintiff's "Customer History" showed the following transactions on July 10, 2013:

| | |
|---|---|
| Collateral Insurance Credit | 4,139.00 |
| VSI Payment Amount | 78.85 |
| VSI Interest Amount | 355.45 |
| VSI Term | 57 |
| Principal Bal DR Adj | 4,139.00 |

Plaintiff was never informed, as required by the Contract, that PNC Bank had purchased Collateral Protection Insurance ("CPI"), nor was he informed, as required by the Contract, of the cost of the CPI or that it was added to his principal balance. *See* ¶ 12 above. As a

result, Plaintiff unknowingly paid PNC Bank for the cost of the CPI and a related finance charge over the life of his Contract.

18.   Upon belief, PNC Bank purchased the CPI from State National Insurance Company ("SNIC").

19.   From December 2018 through March 2019, Plaintiff had numerous telephone conversations with representatives of PNC Bank and SNIC regarding the unauthorized charges.

20.   On January 14, 2019, as requested by SNIC, Plaintiff provided SNIC with Farm Bureau declarations pages indicating that Plaintiff had maintained the required insurance on the Vehicle from the date of purchase, March 16, 2013, and at all times during the Contract.

21.   Despite the fact that Plaintiff provided proof that he had maintained the required insurance on the Vehicle throughout the life of the Contract, these communications proved to be fruitless as both PNC Bank and SNIC informed Plaintiff that the CPI premium ($4,139.00) added to Plaintiff's principal loan balance on July 10, 2013, and the related finance charges would not be refunded.

22.   PNC Bank had no right under the Contract to force-place insurance on the Vehicle, because, as previously noted, Plaintiff fully complied with his obligation to maintain physical damage insurance coverage for the Vehicle.

23.   Furthermore, by providing contact information for his insurance agent as stated above, PNC Bank knew or should have known that Plaintiff maintained the requisite insurance on the Vehicle and that force-placing insurance on the Vehicle was unwarranted.

## **Tolling**

24. Over the life of Plaintiff's Contract the only communication he had with PNC Bank came in the form of monthly bills, none of which notified Plaintiff, as required by the Contract, that PNC had purchased CPI to insure its interest in Plaintiff's vehicle. Plaintiff had no communication with SNIC during the life of his Contract. Due to the limited communication with PNC Bank and complete absence of communication with SNIC, Plaintiff had no way of knowing that CPI had been purchased and charged to his account.

25. Defendants were under a continuous duty to disclose to Plaintiff and members of the class if CPI was purchased for their vehicle and the associated cost that would be added to their accounts.

26. Upon belief, Defendants concealed the unwarranted purchase of CPI and the subsequent charges to Plaintiff's and class members' accounts by failing to provide contractually-required notice, and Plaintiff and class members reasonably relied upon this concealment.

27. Due to Defendants' concealment, Plaintiff and class members could not have discovered, through the exercise of reasonable diligence, the true nature of Defendants' unlawful conduct and unwarranted charges to their accounts.

28. Accordingly, the applicable statutes of limitations should be tolled by operation of the discovery rule with respect to all claims alleged in this Complaint, and Defendants should be estopped from relying on statutes of limitations defenses in this action.

## Class Action Allegations

29. Under Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of himself and the class, initially defined as:

> All persons who have purchased and financed vehicles under a Retail Installment Sales Contract where PNC Bank added physical damage insurance when such vehicle was already insured by the purchaser.

30. Excluded from the class are:

    a. Defendants and any entity in which Defendants have a controlling interest, and their legal representatives, employees, officers, directors, assigns, and successors; and

    b. The judge, magistrate, and any special master to whom this case is assigned, and any member of their immediate families.

31. Upon information and belief, the class is so numerous that individual joinder of all members is impracticable pursuant to Fed. R. Civ. P. 23(a)(1). The disposition of claims in a single class action will provide substantial benefits to all parties and to the Court, including the just, speedy, and inexpensive determination of this matter. Moreover, although the exact number and identities of members of the class are unknown at this time, such information is readily identifiable through records and transaction data kept by Defendants.

32. Plaintiff's claims are both typical and aligned with the proposed class claims. The damages sustained by Plaintiff are also typical of those sustained by class members. The factual and legal bases of the claims are common to all class members and represent a common injury. *See* Fed. R. Civ. P. 23(a).

33.  There are many common questions of law and fact.  These common issues include, but are not limited to, whether:

> a. PNC Bank breached the contracts with borrowers by purchasing force-placed insurance and charging such insurance against the accounts of the members of the class without any contractual authority to do so, including (i) purchasing physical damage insurance despite class members already having such insurance; and (ii) refusing to refund class members for the amount paid for premiums for these force-placed insurance policies.

These common questions of law and fact predominate over individual questions, and a class action is the superior means to litigate the claims.  *See* Fed. R. Civ. P. 23(b)(2).

34.  There is a well-defined community of interest in the questions of law and fact involved in this matter such that a class action is clearly the superior method for the fair and efficient handling of this dispute.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of potentially thousands of persons who of have purchased and financed vehicles under a Retail Installment Sales Contract with Defendants is impracticable. The damages suffered by individual class members are relatively small on an individual basis, making the acquisition of counsel to represent a class member on an individual basis cost prohibitive, especially when taking into consideration the sophisticated Defendants in this case.  The expense and burden of litigation would make it difficult, if not impossible under these circumstances, for the members of the class to individually redress the wrongs done to them by Defendants.  However, because of the commonality of the predominant issues

involved in the class claims, defenses, and damages alleged, there will be no difficulty in maintaining this dispute as a class action.

35. Plaintiff will fairly and adequately represent and protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4). The named Plaintiff identified in this Complaint purchased and financed a vehicle under a Retail Installment Sales Contract with force-placed insurance imposed by Defendants and is thus typical of the class members as required by Fed. R. Civ. P. 23(a)(3). Plaintiff has retained competent counsel with experience in class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests that are contrary to or adverse to those of the class that Plaintiff seeks to represent.

36. Certification is also appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendants acted or refused to act on grounds that apply generally to the class, thus warranting injunctive or declaratory relief. Defendants should be required to implement an appropriate, concrete, and timely refund protocol for premiums paid for unjustified force-placed insurance.

37. Alternatively, should the Court find that Plaintiff cannot meet the requirements of Fed. R. Civ. P. 23(b)(2) or 23(b)(3), the Court should certify liability issues that are susceptible to class-wide proof.

38. The precise liability issues Plaintiff would seek to alternatively certify will be set forth more fully in their forthcoming motion for class certification; however, those predominant liability issues will necessarily relate to whether Defendants have an

obligation to refund premiums paid for unwarranted force-placed insurance and whether Defendants' failure to do so is a breach of contract with its customers.

## FOR A FIRST CAUSE OF ACTION
### Breach of Contract

39. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

40. The Retail Installment Sales Contracts that Plaintiff and each member of the class entered into for the purchase of a vehicle are binding contracts. Each of those Contracts was assigned to PNC Bank.

41. Pursuant to these Contracts, Plaintiff and each member of the class agreed to the following:

> [T]o have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle.

42. Pursuant to these Contracts, Defendants also agreed to the following:

> If [Plaintiffs] do not have [physical damage] insurance, we may, if we choose, buy physical damage insurance. If [Defendants] decide to buy physical damage insurance, [Defendants] may either buy insurance that covers [Plaintiffs'] interest and [Defendants'] interest in the vehicle, or buy insurance that covers only [Defendants'] interest. If [Defendants] buy either type of insurance, [Defendants] will tell [Plaintiffs] which type and the charge [Plaintiffs] must pay.

43. At all times during the course of their Contracts with Defendants, Plaintiff and members of the class complied with their contractual obligations to maintain physical damage insurance coverage for the Vehicle(s).

44. Defendants breached the contracts with Plaintiff and members of the class in at least the following ways:

    a. Defendants purchased force-placed insurance and charged the same against the accounts of Plaintiff and members of the class without any contractual authority to do so when (i) they ignored proof of the required insurance in Plaintiff's and class members' Contracts; (ii) they purchased physical damage insurance despite the fact that Plaintiff and class members were required to and did purchase such insurance at the time of sale; (iii) they failed to inform Plaintiff and class members of the type of insurance purchased; and (iv) they failed to inform Plaintiff and class members of the cost of the insurance purchased and ultimately charged to Plaintiff's and class members' principal balance.

45. As a direct and proximate result of Defendants' breach, Plaintiff and the members of the class have suffered harm and monetary loss.

## SECOND CAUSE OF ACTION
## Violation of the Truth in Lending Act
## (15 U.S.C. § 1601 *et seq.*)

46. Plaintiff incorporates by reference each and every allegation of the preceding paragraphs as if fully set forth herein.

47. Automotive loan agreements between PNC Bank and its customers are subject to the disclosure requirements of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board

48. PNC Bank is a "creditor" as defined by TILA.

49. PNC Bank is required to clearly, conspicuously, and timely disclose all finance charges, other charges, and third-party charges that may be imposed in connection with an automotive loan or line of credit.

50. PNC Bank is further required to accurately and fully disclose the terms of the legal obligation between parties.

51. PNC Bank violated TILA by, *inter alia*, (i) adversely changing the terms of automotive loans after origination without consent and altering the terms of the loan to include insurance in amounts greater than necessary to protect its interest in property; and (ii) failing to provide proper notice, after origination, that PNC Bank was amending the terms of loans as described in the relevant automotive loan documents.

52. Plaintiff did not discover and did not have reasonable opportunity to discover PNC Bank's nondisclosures until he was provided a copy of his "Customer History" in December 2018, which showed the CPI charge. Prior to that time, Plaintiff had no reason or opportunity to suspect any TILA violations.

53. Plaintiff's TILA claim is timely. The statute of limitations on Plaintiff's TILA claim did not begin to run and/or was equitably tolled until such time that he had a reasonable opportunity to discover PNC Bank's TILA violations. It would be manifestly unjust and inconsistent with the purposes of TILA to apply and enforce an earlier accrual date for Plaintiff's TILA claim.

54. PNC Bank systematically and pervasively engaged in similar violations of TILA to the detriment of other members of the class.

55.     Plaintiff and the class have been injured and have suffered actual monetary loss as a result of PNC Bank's violations of TILA.

56.     As a result of PNC Bank's violations, Plaintiff and the class are entitled to recover actual damages and a penalty of $1,000,000 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2).

57.     Plaintiff and the class also are entitled to recovery of attorneys' fees and costs to be paid by PNC Bank, as provided by 15 U.S.C. § 1640(a)(3).  In addition, Plaintiff and the class are entitled to a declaration that PNC Bank's actions violate TILA and to corresponding injunctive relief enjoining PNC Bank from engaging in further such violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays that this Court enter judgment against Defendants and in favor of Plaintiff and the class and award the following relief:

    a.   Certification of the proposed class under Fed. R. Civ. P. 23;

    b.   Appointment of Plaintiff Larry E. Scott, Jr. as class representative;

    c.   Appointment of the undersigned attorneys as class counsel;

    d.   Finding that the Defendants are liable for the claims asserted herein;

    e.   An award of appropriate relief, including actual, general, specific, incidental, punitive, and consequential damages and restitution to which Plaintiff and class members are entitled;

    f.   An award of attorneys' fees and costs; and

g. Such other and further judicial determinations and relief as may be appropriate in this proceeding.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted, July 25, 2019

**CARLSON LYNCH LLP**

/S/ *Gary F. Lynch*
Gary F. Lynch
E-Mail: glynch@carlsonlynch.com
Matthew D. Brady
E-Mail: mbrady@carlsonlynch.com
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
Fax: 412-231-0246

**ASSOCIATED COUNSEL PENDING ADMISSION *PRO HAC VICE*:**

**RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, L.L.C.**

T. Christopher Tuck, ID No.: 9135
E-mail: ctuck@rpwb.com
Robert S. Wood, ID No.: 7965
E-mail: bwood@rpwb.com
T.A.C. Hargrove, II, ID No.: 12487
E-mail: thargrove@rpwb.com
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
Tel: 843.727.6500
Fax: 843.216.6509

ATTORNEYS FOR PLAINTIFF